USCA1 Opinion

 

 UNITED STATES COURT OF APPEAL FOR THE FIRST CIRCUIT _________________________ No. 93-1127 JOSEPH DOW, ET AL., Plaintiffs, Appellants, v. UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, ET AL., Defendants, Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ _________________________ Before Torruella, Selya and Boudin, Circuit Judges. ______________ _________________________ Paul Alan Levy, with whom Mark D. Stern and Public Citizen ______________ _____________ ______________ Litigation Group were on brief, for appellants. ________________ Christopher N. Souris, with whom Feinberg, Charnas & _______________________ ______________________ Schwartz was on brief, for appellees. ________ _________________________ July 28, 1993 _________________________ SELYA, Circuit Judge. This appeal pivots on the SELYA, Circuit Judge. ______________ meaning and applicability of two documents concerning the internal governance of a labor union, Local No. 218 ("the Local"): the constitution of its umbrella union, the United Brotherhood of Carpenters and Joiners ("the International" or "UBCJA") and the by-laws of Local 218 itself. Much to the dismay of two dissident members of the Local, the district court deferred to the International's construction of the texts and entered judgment accordingly. We affirm. I I _ Background Background __________ Local No. 218 is affiliated with, and subject to the direction of, the International. The latter's constitution and the Local's by-laws both speak to the manner in which mid-term vacancies in leadership positions on the local level are to be filled. The constitution states that: [w]hen vacancies occur in any elective office or in the position of Business Representative, the President may appoint a qualified member to fill the vacancy pro-tem, until such time as appropriate notices are sent to the membership for the holding of an election to fill the vacancy. UBCJA Const., 32(B). Yet, with regard to the position of Business Manager/Financial Secretary ("Manager"), the Local's by- laws provide that, if a vacancy occurs: the Business Representative shall assume the duties of the Business Manager/Financial Secretary and shall appoint a Business Representative. By-Laws of Local No. 218, art. II, 1(A). 2 In 1992, the latent tension between these two provisions surfaced. The incumbent Manager resigned. The Local's President, Joseph Dow, appointed himself to fill the vacancy on a temporary basis and called for an election pursuant to section 32(B) of UBCJA's constitution. Dow viewed the provisions we have quoted as conflicting and reasoned that the constitution trumped the by-law provision for automatic succession. The International resisted Dow's attempt to grab the reins of power.1 Its president, Sigurd Lucassen, directed Dow to give effect to the by-law provision by allowing the Business Representative, Robert Cataldo, to succeed to the Manager's post. Lucassen found no conflict between the two instruments of governance; the by-law provision simply mandates automatic succession to fill a particular vacancy while section 32(B) of the constitution specifies a procedure for filling vacancies when no other mechanism has been provided. Because the by-law provision operated ex proprio vigore to fill the Manager's __ _______ ______ position simultaneously with the incumbent's resignation, it prevented a vacancy from occurring and eliminated any need for resort to the constitutional provision. It was on this understanding, Lucassen intimated, that the International approved the inclusion of article II, section 1(A) in Local 218's ____________________ 1Inasmuch as the Manager's position is the brightest and most coveted star in a local union's administrative firmament, the struggle over succession takes on added significance. 3 by-laws.2 Little placated, Dow and a fellow union member, Robert Renda, sued in federal district court, premising their action on section 301(a) of the Labor-Management Relations Act, 29 U.S.C. 185 (1988), and section 101(a)(1) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. 412 (1988). The plaintiffs named the International, the District Council of Carpenters, and Local 218 as defendants.3 They sought to compel recognition of Dow's status as Manager pro tem and to precipitate ___ ___ an election to fill the balance of the unexpired term. On cross motions for summary judgment, the district court gave controlling weight to the International's interpretation of the governing documents and entered judgment for the defendants. This appeal ensued. II II __ Analysis Analysis ________ A. A. __ Summary judgment is appropriate when the record documents that possess evidentiary force "show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The mechanics of Rule 56 are familiar: once the moving party avers "an absence of evidence to support the nonmoving party's ____________________ 2Section 32(B) of the constitution was in effect when the International approved the Local's by-laws. Absent such approval, the by-laws could not have taken effect. 3For ease in reference, we discuss the issues as if Dow and the International were the sole parties in interest. 4 case," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the _____________ _______ burden of production shifts to the nonmovant. To defeat a properly focused motion, the nonmovant must tender "significant probative evidence," First Nat'l Bank v. Cities Serv. Co., 391 _________________ ________________ U.S. 253, 290 (1968), which, when viewed in the light most flattering to the nonmovant, illumines a genuine and material factual dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. ___ ________ ___________________ 242, 247-48 (1986); Medina-Munoz v. R.J. Reynolds Tobacco Co., ____________ __________________________ 896 F.2d 5, 8 (1st Cir. 1990); Garside v. Osco Drug, Inc., 895 _______ ________________ F.2d 46, 48 (1st Cir. 1990). While the required proof need not necessarily rise to the level of admissible trial evidence, see ___ Celotex, 477 U.S. at 324, it must consist of something more than _______ "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz, 896 F.2d at 8; accord Fragoso v. ____________ ______ _______ Lopez, 991 F.2d 878, 886 (1st Cir. 1993); Kelly v. United States, _____ _____ _____________ 924 F.2d 355, 357 (1st Cir. 1991). Brash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment. This appeal implicates a specialized application of Rule 56. It is common ground that a labor union's internal affairs comprise an enclave best kept free from judicial intrusion. See Local No. 48 v. United Bhd. of Carpenters & ___ _____________ _____________________________ Joiners, 920 F.2d 1047, 1051 (1st Cir. 1990); Howard v. United _______ ______ ______ Ass'n of Journeyman & Apprentices, Local # 131, 560 F.2d 17, 21 ________________________________________________ (1st Cir. 1977). Thus, the scope of judicial inquiry is narrowly circumscribed in such cases. And, moreover, the resultant 5 circumscription is particularly stringent when, as now, a labor organization's interpretation of its own constitution is singularly at issue. See Local No. 48, 920 F.2d at 1052. ___ ____________ B. B. __ In Local No. 48, a case construing the very union ______________ constitution that is at issue here, this court concluded that a general union's interpretation of its own governance documents will ordinarily be upheld "unless that interpretation is patently unreasonable." Id. On that basis, we refused to second-guess ___ the International when it advanced a "plausible" reading of its constitution. Id. At bottom, then, Local No. 48 stands for the ___ ____________ proposition that, in the absence of bad faith,4 a labor organization's interpretation of internal union documents puts an end to judicial scrutiny so long as the interpretation is "facially sufficient" or grounded in "'arguable authority.'" Id. ___ (citation omitted); accord Newell v. International Bhd. of Elec. ______ ______ ___________________________ Workers, 789 F.2d 1186, 1189 (5th Cir. 1986); Local 334, United _______ __________________ Ass'n of Journeymen & Apprentices v. United Ass'n of Journeymen & _________________________________ ____________________________ Apprentices, 669 F.2d 129, 131 (3d Cir. 1982); Stelling v. ___________ ________ International Bhd. of Elec. Workers, Local Union No. 1547, 587 ____________________________________________________________ F.2d 1379, 1389 n.10 (9th Cir. 1978), cert. denied, 442 U.S. 944 _____ ______ (1979). This black letter law simplifies our task. We afford plenary review to the entry of summary judgment below. See ___ ____________________ 4Here, Dow adduced no evidence that the International formulated its interpretation in bad faith. What is more, he has not asserted a claim of bad faith on appeal. 6 Garside, 895 F.2d at 48. To do so here, we need only determine _______ whether the International's synthesis of the juxtaposed documents, i.e., its view that section 32(B) of the constitution ____ leaves room for, and can comfortably operate side by side with, a by-law provision mandating automatic succession to a particular post, is "so implausible or patently unreasonable as to be undeserving of deference." Local No. 48, 920 F.2d at 1052. ____________ C. C. __ We turn now to the record, first examining the relevant texts. On one hand, the constitution, quoted supra p. 2, states _____ that when "vacancies occur in any elective office," the president of the local "may" appoint a replacement to serve until an election is held. On the other hand, the by-laws, see supra p. ___ _____ 2, state that "the Business Representative shall assume the duties of the [Manager]" if a "vacancy [in that position] occurs." While these provisions can assuredly be read to conflict and if they clash, the constitutional provision prevails, see UBCJA Const., 6(C), 25(A) a harmonious reading ___ of them is hardly implausible. We think it is significant that the constitution uses precatory rather than mandatory language. The permissive "may" contained in the constitution, as opposed to the directory "shall" contained in the by-law, signals that a temporary, presidential appointment and subsequent election is but one available method for filling vacancies, impliedly suggesting that other, equally satisfactory methods can be employed. Accord La Joie v. Bay Counties Dist. Council, 143 ______ _______ ____________________________ 7 L.R.R.M. (BNA) 2547, 2549 (N.D. Cal. 1993) (refusing, for this reason, to find a conflict between the identical constitutional provision and the by-laws of a different local). On this (entirely plausible) reading, automatic succession is a permissible method of selection.5 Hence, there is ample textual support for the International's conclusion that the constitution's words are inapplicable here because a new Manager has already been designated that is, the vacancy has already been filled through an authorized alternative process. Dow contends that in determining whether the International proffered an interpretation worthy of deference, a reviewing court must not examine the letter of the texts in majestic isolation, but must read them in conjunction with available extrinsic evidence of past union interpretations and practices. We agree that "track record" evidence may often be illuminating and should be considered. After all, evidence that a union decision follows established custom might serve to strengthen the decision's inherent reasonableness and, by like token, evidence that a union decision constitutes a radical break from uniform past practice might undermine its seeming plausibility. Cf. Local No. 48, 920 F.2d at 1052 (citing the ___ _____________ context "of an ongoing consolidation process" as one indicium of the reasonableness of the union's authorization of a merger). ____________________ 5We believe it is noteworthy that the United States Department of Labor's regulations implementing the LMRDA expressly authorize "automatic succession" to fill mid-term vacancies. 29 C.F.R. 452.25 (1992). 8 Here, however, the summary judgment record is barren of any evidence sufficient to support an inference that the International's present reading of the constitution is newly contrived or inconsistent with past practice. To be sure, appellant tried to plug this hole. His failed efforts center around three sworn statements signed by John S. Rogers, once a high-ranking officer of the International. Appellant tells us that these affidavits evidence a tradition of requiring elections to fill mid-term vacancies in the face of conflicting local by-laws. He is wrong. To the extent that the affidavits touch upon matters germane to this appeal, they are much too vague to forestall summary judgment. Appellant places greatest emphasis on Rogers's repeated statements that it has "always" been UBCJA's practice to conduct elections to fill mid-term vacancies. In context, however, this assertion constitutes no more than an empty generality. A purely conclusory statement of this sort is manifestly insufficient to support an inference of inconsistent past practice without an accompanying suggestion nowhere to be found that such a vacancy has ever before occurred in a local that had adopted an automatic succession rule. See Local No. 48, 920 F.2d at 1051 ___ _____________ (explaining that unsubstantiated conclusions are inadequate to block summary judgment); Oliver v. Digital Equip. Corp., 846 F.2d ______ ____________________ 103, 109 (1st Cir. 1988) (refusing to allow "unsubstantiated allegations" to defeat summary judgment). In the same vein, Rogers's general statement that "the Brotherhood and its local 9 unions" have deemed a resignation to create "a vacancy . . . regardless of whether or not the applicable Constitution or By- Laws contained a successorship provision" is devoid of significance absent an indication nowhere to be found that a particular incident actually occurred and that Rogers possesses some knowledge about it. See Anderson, 477 U.S. at 248-49 ___ ________ (stating that, in the summary judgment context, suggested inferences must be supported by "specific facts"); Medina-Munoz, ____________ 896 F.2d at 9 (terming plaintiff's attempted application of a conclusion to a different factual predicate "too large a leap"). In light of these gaps, the Rogers affidavits, carefully read, do not contradict UBCJA's sworn averment that, at least within the past five years, the International has never ordered a local operating under an approved automatic succession procedure to hold an election to fill a vacancy.6 Indeed, since the record demonstrates that the International has approved a number of local union by-law provisions incorporating automatic succession regimes, including the provision at issue here, the record virtually compels the inference that UBCJA's present construction of the juxtaposed instruments of governance is consistent with its past practice. ____________________ 6The shortcomings in the Rogers's affidavits are all the more striking because appellant extracted not one, but three, successive affidavits from Rogers, over a period spanning three and one-half months. The latest of these was executed a mere three days before the hearing on summary judgment. Since Dow thrice went to the well in an effort to secure supplemental information, we think it fair to assume that everything that could be said was in fact said. 10 In short, appellant's "past practice" proffer represents yet another situation where a court considering a motion for summary judgment "cannot accept, in lieu of documented facts, conclusory assertions." Sheinkopf v. Stone, 927 F.2d _________ _____ 1259, 1262 (1st Cir. 1991). Consequently, we hold that appellant failed to raise a genuine question regarding past practice that would bear on the reasonableness of the International's textual construction. We have said enough.7 While the International's take on the written provisions may not be the only possible one, or even the most natural one, it is well within the universe of acceptable interpretations. Because plausibility is all that is required in a situation of this kind, the lower court appropriately granted summary judgment on the existing record. III III ___ Curtailment of Discovery Curtailment of Discovery ________________________ ____________________ 7We reject out of hand appellant's claim that two other factual disputes sufficient to defeat UBCJA's motion for summary judgment lurk in the record. First, pointing to the absence, as of September 9, 1992, of documentary proof anent Cataldo's appointment as Business Representative, appellant speculates that Cataldo was not duly appointed and, therefore, could not succeed to the Manager's position pursuant to the by-laws. The speculation does not hold water: a nonmovant cannot defeat a motion for summary judgment solely by asserting that the movant has not adduced, or explained its failure to adduce, the best possible proof of a material point. See Celotex, 477 U.S. at ___ _______ 323; Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 182 (1st ____ ___________________________ Cir. 1989). The second dispute concerns whether Cataldo, in violation of the constitution, assumed the Manager's position before resigning as Local 218's Recording Secretary. Because it is uncontradicted that Cataldo no longer held the latter position by October 7, 1992, at the latest, we, like the district court, deem the exact date of his resignation to be immaterial. 11 Appellant's fall-back position is that the judgment below must be vacated because the district court unduly curtailed discovery prior to deciding the summary judgment motions. See ___ generally Celotex, 477 U.S. at 322 (recognizing the requirement _________ _______ of "adequate time for discovery"); Fed. R. Civ. P. 56(f) (authorizing continuances so that a nonmovant, upon a proper showing, may gather "facts essential to justify [an] opposition" to summary judgment). The argument is cast in disingenuous terms and distorts the nature of the district court's discovery ruling. Early in the proceeding, the district court heard a cacophony of sounds on the issue of discovery: on one flank, the International urged a stay of discovery; on the opposite flank, Dow sought to expedite discovery and widen its scope. Confronted with cross motions for summary judgment that might be susceptible to resolution on the submitted papers, and anticipating that oral argument on the cross motions would take place on January 12, 1993, the district court, in a ruling from the bench, halted discovery on December 18, 1992. The court, however, dropped an anchor to windward: since the full panoply of papers regarding the motions had not yet been filed, the judge invited Dow to request a continuance for the purpose of conducting discovery at the hearing on summary judgment if, by then, Dow still believed that he could not adequately argue the cross motions without such discovery.8 Hence, notwithstanding appellant's current ____________________ 8Various exchanges at the December 18 hearing tell the tale. We offer a few representative vignettes. The judge advised appellant's counsel that if the UBCJA "file[s] something of a 12 caterwauling about a categorical ban on discovery, the court's ore tenus order was plainly an interim measure, likely ___ _____ extinguishable for the asking. Although Dow held the key to discovery, he neglected to unlock the door. The January 12 hearing came and went without any semblance of a renewed request to conduct discovery. Nowhere did appellant ask, even as a form of alternative relief, that a decision on summary judgment be postponed until further discovery could be obtained. Rather, he chose to shelve the quest for discovery and dive head-first into the summary judgment maelstrom.9 The rule in this circuit is clear that, when a court ____________________ factual nature, and you need something to rebut, then I would move [on January 12] for discovery." The judge later reiterated the point, stating that once the paperwork is complete, "you [appellant's attorney] can see whether you need any discovery. If, for some reason, on the 12th you come in here and say, I can't argue the motion because there is a particular document or a factual allegation that has been made and I need to look at one particular thing, maybe I would do it." 9Appellant's suggestion that he revived his discovery request at the January 12 hearing is, at best, wishful thinking. His counsel's oral argument contained only a fleeting reference to appellant's past inability to conduct discovery as he would have preferred. His suggestion that he renewed the request in a supplemental memorandum filed in connection with the hearing is equally jejune. The memorandum, directed primarily toward an entirely different matter, contained a solitary sentence more obfuscatory than illuminative, concerning "legitimate and necessary outstanding requests for discovery." These constitute no more than veiled references which, without more, cannot take the place of an affirmative request to conduct further discovery. Cf. Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. ___ ___________________ ____________________________________ Co., 840 F.2d 985, 989 (1st Cir. 1988) (holding that oral and ___ written statements "complaining about [a] stay of discovery," coupled with "cryptic allusions," are "entirely inadequate" to support a Rule 56(f) motion). 13 temporizes or otherwise defers a ruling on a discovery request, and the proponent thereafter fails to resurrect the issue in a timely fashion, he is deemed to have abandoned the point and cannot later complain on appeal concerning a denial of the discovery in question. See DesRosiers v. Moran, 949 F.2d 15, 22- ___ __________ _____ 23 (1st Cir. 1991). As we have said, "a party who seeks a ruling must persist in his quest to some reasonable extent." Id. at 23. ___ Having flouted this rule, Dow finds himself mired in a pit similar to that which the government dug for itself in Reilly ______ v. United States, 863 F.2d 149 (1st Cir. 1988). There, the ______________ government moved for additional discovery at a pre-trial hearing before a magistrate judge. In denying the motion, the magistrate told the government that it might mull the matter for a few days and renew the request in a more specific form. A follow-up request never came. On appeal, the government attempted to press an objection to the denial of discovery. We overruled the objection, holding that the government had an obligation "to specify, face-up and squarely, what information it continued to seek." Id. at 168. By not resurfacing the point, despite an ___ express invitation to do so, it "waived the right to protest the denial of" discovery. Id. ___ The same result must obtain here. The district court voiced a clear invitation to seek discovery anew. Dow eschewed it. He cannot now "legitimately complain of lack of access to [discovery which he] never seasonably requested." Id. at 167. ___ This is as it should be; any other outcome would squander 14 judicial resources and give parties who, like Dow, plunge headlong into the merits of a case without pausing to exhaust discovery options a second bite at the cherry. In the last analysis, "[c]ourts, like the Deity, are most frequently moved to help those who help themselves." Paterson-Leitch Co. v. ____________________ Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 989 (1st _______________________________________ Cir. 1988); see also Hebert v. Wicklund, 744 F.2d 218, 222 (1st ___ ____ ______ ________ Cir. 1984) (refusing to "employ [Rule 56(f)] to spare litigants from their own lack of diligence"). IV IV __ Conclusion Conclusion __________ We need go no further. By failing to renew his request for discovery at the appropriate time, Dow waived any objection to the district court's decision to resolve the summary judgment motions on the existing record. And, because the International's reconciliation of the arguable conflict between its constitution and the Local's by-laws is plausible in terms of that record, the entry of summary judgment in defendants' favor must stand. Affirmed. Affirmed. ________ 15